UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KATERYNA BAYUK,

    Plaintiff,

v.                                                   Case No. 8:18-cv-00163-T-SPF

JOANNA PRISIAJNIOUK,

    Defendant.
_____/

## **ORDER**

This cause is before the Court upon Kateryna Bayuk's ("Plaintiff") Motion for Summary Judgment on Count II of the Complaint ("Plaintiff's Motion") (Doc. 37), Joanna Prisiajniouk's ("Defendant") Motion for Summary Judgment on Counts I, II, and III of the Complaint ("Defendant's Motion for Summary Judgment") (Doc. 40), and Defendant's Motion to Strike Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment on Defendant's Counterclaim ("Motion to Strike") (Doc. 52).[1] Upon consideration, Plaintiff's Motion is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and Defendant's Motion to Strike is DENIED.

---

[1] Defendant seeks to strike Plaintiff's response (Doc. 49) to Defendant's Motion for Summary Judgment (Doc. 40), rather than—as its title suggests—Plaintiff's response to Defendant's Motion for Summary Judgment on Defendant's Counterclaim (Doc. 48).

**BACKGROUND**

This case arises out of a family dispute between Plaintiff (stepmother) and Defendant (stepdaughter) over a Certificate of Deposit issued by the Discover Bank (the "Discover CD"), a Delaware bank, and funded by Orest Bayuk ("Bayuk"), Plaintiff's spouse and Defendant's father. On August 19, 2016, Bayuk renewed the Discover CD Account ending in 4133 with a balance of $164,696.99 (Doc. 37 at 9). The Discover Bank operates as an online bank with its only branch office located in Delaware (Doc. 23 at 6). At some point in October 2016, Bayuk added both Plaintiff and Defendant as joint owners to the Discover CD, but neither Plaintiff nor Defendant contributed anything to the account (Doc. 39 at 10–11) (Doc. 37 at 1–2). Defendant disputes the fact that Plaintiff was properly added as a joint owner to the Discover CD because, according to Defendant, there is no evidence that Plaintiff signed the account agreement (Doc. 39 at 11). However, in October 2016, Discover Bank issued a letter to Bayuk confirming that he had successfully updated the account to add Plaintiff as a joint owner (Doc. 11-8).

It is undisputed that the terms and conditions of the Discover CD were governed by the Deposit Account Agreement (the "Discover CD Agreement") (Doc. 37 at 27–49). The Discover CD Agreement is governed by Delaware law (*Id.* at 28). As to the nature and rights of the joint tenants over the CD account, Section 6(b) of the Discover CD Agreement provides in relevant part:

- A Joint Account is an Account held by more than one natural person. All Joint Accounts are established as joint tenancy with right of survivorship only.
- Any funds deposited to a Joint Account by any of its owners shall be owned by all joint owners.

- Each owner of a Joint Account may . . . make withdrawals . . . with respect to the Joint Account without notice to or consent from any of the other owners of the Joint Account.
- The Joint Account may be closed by either joint owner. However, a joint owner may not remove another joint owner from the Joint Account.
- Any action of one owner of a Joint Account shall be binding upon all owners of a Joint Account.
- [The Bank] may act upon the direction of one or more owners of the Joint Account without notice to or consent from any of the other owners of the Joint Account.

*Id.* at 31–32. On January 15, 2017, shortly after Plaintiff and Defendant were added to the CD account, Bayuk was involved in an accident and died (Doc. 37 at 2). On February 2, 2017, Defendant withdrew the entire balance of the Discover CD without Plaintiff's authorization (*Id.*). On October 27, 2017, Plaintiff sued Defendant for civil theft, conversion, and unjust enrichment in state court (Doc. 2). On January 19, 2018, Defendant removed the case to this Court and filed an answer to the Complaint and a Counterclaim against Plaintiff (Docs. 1 & 25). The parties then filed cross-motions for summary judgment as to Plaintiff's Complaint (Docs. 37 & 40). The parties' motions are ripe for consideration of the Court.

## DISCUSSION

Summary judgment is appropriate if all the pleadings, discovery, affidavits, and disclosure materials on file show that there is no genuine disputed issue of material fact, and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a) and (c). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48

(1986) (emphasis in original). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could decide an issue of material fact for the non-moving party. *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, the court must read the evidence and draw all factual inferences in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must go beyond the pleadings and "identify affirmative evidence" which creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir.2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver,* 836 F.2d 1560, 1563 (11th Cir.1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990) (citing *Anderson,* 477 U.S. at 252).

## I. Choice of Law

It is first necessary to determine the applicable law to Plaintiff's claims. As here, when a court's jurisdiction is based on diversity of citizenship (Docs. 7 and 18), the court "must apply the choice of law rules of the forum state to determine which substantive law governs the action." *Perez v. Fedex Ground Package Sys.*, 587 F. App'x. 603, 606 (11th Cir. 2014) (internal quotation omitted). Under Florida law, a court makes a separate choice of law determination as to each claim under consideration. *Id.* The Eleventh Circuit has articulated the following step-by-step analysis for choice of law issues:

> The first step in [a] choice of law analysis is to ascertain the nature of the problem involved, i.e., is the specific issue at hand a problem of law of contracts, torts, property, etc. The second step is to determine what choice of law rule the state . . . applies to that type of legal issue. The third step is to apply the proper choice of law rule to the instant facts and thereby conclude which [jurisdiction's] substantive law applies.

*Garcia v. Public Health Trust*, 841 F.2d 1062, 1064 (11th Cir. 1988) (quoting *Acme Circus Operating Co. v. Kuperstock*, 711 F.2d 1538, 1540 (11th Cir. 1983)). Plaintiff's Complaint alleges three causes of action against Defendant—civil theft, conversion, and unjust enrichment. Plaintiff's first two causes of action involve tort claims. The third cause of action sounds in contract.

### A. Tort Claims

Florida law utilizes the "most significant relationship" test to resolve choice of law questions for tort claims. *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.,* 341 F.3d 1292, 1301 (11th Cir. 2003) (citations omitted). Florida follows the approach set forth in Section 145 of the Restatement (Second) of Conflict of Laws. *Id.* (citing *Garcia,* 841 F.2d at 1064–65 (11th Cir.1988)). According to the Restatement, "[t]he rights and liability of

5

the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." Restatement (Second) Conflict of Laws § 145 (1971). Contacts to be taken into account include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.*

At the center of Plaintiff's claims for conversion and civil theft is her claim that she was deprived of her property rights over fifty percent of the proceeds of the Discover CD jointly held with Defendant. In other words, Plaintiff is alleging a pecuniary injury. A pecuniary injury occurs in the place where its effects are felt. S*ee Innovative Strategic Commun., LLC v. Viropharma, Inc.*, No. 8:11-CV-1838-T-33TBM, 2012 WL 3156587, at *4 (M.D. Fla. Aug. 3, 2012) (citing Restatement (Second) Conflict of Laws § 145, cmt. F and *Grupo Televisa, S.A. v. Telemundo Comm. Grp., Inc.,* 485 F.3d 1233, 1241 (11th Cir.2007)). Plaintiff is domiciled in Florida, therefore, the place where the alleged injury occurred is Florida. Normally, the state where the injury occurred is the "decisive consideration in determining the applicable choice of law." *Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla. 1980). However, "when the injury is purely financial," as in this case, the place of injury "is not due dispositive weight." *Valentino v. Bond*, No. 3:06CV504/MCR, 2008 WL 3889603, at *6 (N.D. Fla. Aug. 19, 2008).

In this case, the other factors combine to outweigh the place of injury. *See Brown v. Nat'l Car Rental Sys., Inc.*, 707 So.2d 394, 396 (Fla. 3d DCA 1998) ("The state where the

injury occurred may have little actual significance for the cause of action" because "[o]ther factors may combine to outweigh the place of injury as a controlling consideration"). The conduct that led to the injury—closing the account and withdrawing the funds—occurred in Delaware where the funds were located (Doc. 37 at 28). Therefore, the second factor weighs in favor of Delaware. The third factor, however, is neutral because Defendant is a resident of Illinois and Plaintiff a resident of Florida. Further, and more important in the Court's view, the parties' relationship centered around Delaware. The parties' relationship was created by the Discover CD Agreement, which was governed by Delaware law (Doc. 37 at 28). The Discover CD Agreement lists only one Discover branch office in Delaware, which leads to the conclusion that the Discover CD was located in Delaware.[2] After balancing the factors to be considered, the Court concludes that Delaware is the state with the most significant relationship to Plaintiff's claims. Accordingly, Plaintiff's tort claims will be analyzed under the applicable Delaware law.

B. Quasi-Contract Claim

Plaintiff's Complaint also involves an alternative count for unjust enrichment. "A claim for unjust enrichment sounds in quasi-contract, not tort." *ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997). Florida law applies the *lex loci*

---

[2] Plaintiff alleged that she and Bayuk visited a Discover branch located in Florida to open the account; however, Plaintiff fails to support her allegation with any affirmative evidence, and the documental evidence contradicts such statement. *See Crawford-El*, 523 U.S. at 600 (holding that the non-movant must "identify affirmative evidence" which creates a genuine dispute of material fact). Therefore, Plaintiff's assertion that the funds were deposited in a Discover branch in Florida is an unsupported factual allegation that is insufficient to defeat a motion for summary judgment. *See Ellis,* 432 F.3d at 1326 (holding that "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion").

7

*contractus* rule when determining the governing law applicable to unjust enrichment claims. *Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.,* 92 F.3d 1110, 1119 (11th Cir. 1996); *Am. Home Assur. Co. v. Weaver Aggregate Transport, Inc.*, 773 F. Supp. 2d 1317, 1324 (M.D. Fla. 2011). The *lex loci contractus* rule looks to the place the contract was executed. *Lanoue v. Rizk,* 987 So.2d 724, 727 (Fla. 3d DCA 2008). However, if a contract contains a choice of law provision, which does not violative Florida public policy, the Court must give deference to the parties' choice of law. *Gillen v. United Servs. Auto Ass'n*, 300 So.2d 3, 6–7 (Fla. 1974); *Muniz v. GCA Servs. Grp., Inc.*, No. 3:05-cv-172-J-33MMH, 2006 WL 2130735, at *1 (M.D. Fla. Jul. 28, 2006).

As previously discussed, the Discover CD is governed by the Discover CD Agreement. The Discover CD Agreement provides in relevant part, "[e]xcept where noted your Account and this Agreement are governed by Delaware and Federal law. If Delaware and Federal law are inconsistent, or if Delaware law is preempted by Federal law then Federal law governs." (Doc. 39-6 at 3). Neither party asserts that the choice of law clause in the Discover CD Agreement violates Florida public policy. Therefore, the Court must look to the choice of law clause in deciding what law to apply to Plaintiff's unjust enrichment claim.

Plaintiff argues that federal common law, not Delaware law, governs the Discover CD agreement. Specifically, Plaintiff argues that the Supreme Court decision in *U.S. v. Craft,* 535 U.S. 274 (2002), is the controlling law in this case (Doc. 49 at 5).[3] In *Craft*, the

---

[3] The Court notes that Plaintiff's argument was raised for the first time in her Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, which was filed three months after the filing deadline (*See* Docs. 49 and 40). On June 28,

Supreme Court addressed the issue of whether the Internal Revenue Service could attach a lien over real property owned by a husband and his wife by the entireties in Michigan. *Craft,* 535 U.S. at 276. In reaching its decision that the husband's interest in the property constituted property for purpose of the federal tax lien statute, the Supreme Court first looked to state law to determine the property rights of the husband, and then to federal law to determine whether the husband's "state-delineated rights qualify as 'property' or 'right to property' within the compass of the federal tax lien legislation." *Id.* at 278. In other words, the Supreme Court did not create federal common law over property rights as suggested by Plaintiff. Because the Court finds no support for the Plaintiff's claim that federal common law, rather than Delaware law, governs the Discover CD Agreement, Plaintiff's unjust enrichment claim will be analyzed under Delaware law.

## II. Conversion and Civil Theft Claims

Under Delaware law, "[c]onversion is an act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it." *Arnold v. Society for Sav. Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996) (internal quotation omitted).[4] It is undisputed that Defendant took the proceeds of the Discover CD despite Plaintiff's claim over half of the proceeds. Plaintiff's conversion claim turns on whether Plaintiff retained ownership of the Discover CD proceeds. *See Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d

---

2019, Defendant filed her Motion to Strike Plaintiff's response (Doc. 52). In light of the Court's consideration of Plaintiff's response in reaching its summary judgment decision, Plaintiff's Motion to Strike is denied.

[4] Plaintiff fails to establish that Delaware recognizes a cause of action for civil theft that is in addition to, and materially different from, a claim for conversion.

872, 890 (Del. Ch. 2009) (stating that to establish a claim for conversion a plaintiff must show she had a right to the claimed property).

Plaintiff argues that once the account was closed, she was entitled to fifty percent of the Discover CD proceeds. To establish her ownership over half of the Discover CD proceeds, Plaintiff relies on *Banks v. Banks*, 135 A.3d 311, 316 (Del. Ch. 2016), for the proposition that under Delaware law a joint tenant owned an undivided proportional interest over the property for purposes of "alienation and forfeiture" (Doc. 37 at 5). In *Banks,* the court was confronted with the issue of whether the language in a deed conveying property to two brothers "as joint tenants with right of survivorship" was sufficient to create a joint tenancy under the Delaware statutory provisions regulating joint tenancy in land. *Banks*, 135 A.3d at 317. In reaching its decision, the court provided a historical analysis of the development of the presumption against the creation of joint tenancies in real property and the enactment of the statute containing the presumption. The court stated that "under a joint tenancy [with right of survivorship], property is held jointly by two or more persons, each 'regarded as the tenant of the whole for purposes of tenure and survivorship, while for purposes of alienation and forfeiture each has an undivided share only." *Id*. Relying on this section of the court's opinion, Plaintiff argues that by withdrawing and disposing of the Discover CD proceeds, Defendant alienated the account, and consequently, both parties were entitled to fifty percent of the Discover CD proceeds. Plaintiff's reliance on *Banks* is misplaced. *Banks* addressed the rights of joint tenants over real property rather than bank accounts. In fact, the court's analysis focused on the interpretation of Title 25, Section 701 of the Delaware Code, which specifically

regulates the creation of a joint tenancy, "in lands, tenements or hereditaments," not bank accounts. Del. Code Ann. tit. 25, § 701.

The Delaware statutes regulating banking, on the other hand, state that "[w]hen a deposit in any bank, trust company, savings bank or other banking institution in this State, is made in the name of 2 or more persons, deliverable or payable to either, or to their survivor or survivors, the deposit, or any part thereof, of the increase thereof, may be delivered or paid to either of the persons, or to the survivor or survivors, in due course of business." Del. Code Ann. tit. 5, § 923. Moreover, it is generally understood that under Delaware law the terms of a bank account agreement control the disposition of funds if the agreement language is clear and unambiguous. *See In re Barnes*, No. 107338, 1998 WL 326674, at *4 (Del. Ch. June 18, 1998) ("where the instrument creating the joint [bank] account clearly reflects the intent of the parties with respect to the disposition of the proceeds upon the death of one . . . courts have no discretion to inquire further to show whether the language ought to have been different or should be interpreted to mean something other than what it actually says."). Therefore, *Banks* is not applicable to this case.

Unlike *Banks*, the Delaware Chancery Court in *Mack v. Mack,* addressed the rights of joint tenants over bank account proceeds. No. CV 4240VCN, 2013 WL 3286245, at *1 (Del. Ch. Jun. 28, 2013) ("*Mack* I"). In *Mack* I, a mother brought a claim for conversion and unjust enrichment against her daughter, arguing that her daughter improperly converted the funds held in a joint bank account titled under both their names. The mother argued that the account was created for her benefit and that the daughter's name

11

was added to the account just in case of emergencies. The daughter, on the other hand, argued that as a joint tenant and under the terms of the signature card agreement she was fully entitled to make withdrawals from the account.

The court denied the daughter's motion for summary judgment noting that even if the daughter had legal title to the funds, a question of fact remained as to whether the daughter was able to use the funds. *Id.* at *3. The court stated that when an account agreement is silent as to post-withdrawal ownership rights, the question of legal titled is left to the law. The court then identified two approaches to the issue of post-withdrawal ownership rights. Under the first one, "the drawer on a joint account becomes the sole owner of the funds," under the second, and due to the "unique nature of joint bank accounts, . . . [the] ownership of the funds is . . . determined by the parties' intent, notwithstanding the creation of a joint tenancy." *Id.* at *2. Applying the latter approach, the court found that despite the daughter's entitlement to the property, the mother had proffered enough evidence to show that she told her daughter that her name was on the account for emergency purposes only. In other words, the daughter was on the account solely for the mother's convenience. Therefore, the court concluded that the mother had raised a question of fact as to whether a supervening understanding or agreement existed regarding the disposition of the funds. *Id.* at *3.

After a non-jury trial, the court issued a second opinion in the case. *Mack v. Mack*, No. CV 4240VCN, 2014 WL 6734856, at *1 (Del. Ch. Nov. 28, 2014) ("*Mack* II"). In this opinion, the court clarified that in the absence of an express agreement limiting the daughter's use of the funds, the daughter's right to the withdrawn funds was governed by

the signature card agreement. *Id.* at *2.[5] Because the signature card agreement permitted either joint tenant to withdraw the funds, the court concluded that, although morally reproachable, the daughter was entitled to retain the funds. *Id.* In reaching its conclusion, the court identified the result of the case as one of the risks associated with the use of a joint account without an express agreement regulating the disposition of the funds between the parties. *Id.* at *3. The mother moved for reargument and the court issued a third opinion denying the mother's motion. The court stated:

> It is the nature of a joint account that either party can acquire the whole account either by withdrawing it during the lifetime of the co-owners or by survivorship . . . . *With the right to withdraw comes the right to use the funds unless there is some other limitation*. It is not Daughter's responsibility to prove that she was entitled to use the funds; it is the Mother's burden to prove that there were enforceable restrictions on Daughter's ability to use the funds, and such limitations were not proven.

*Mack v. Mack*, No. CV 4240-VCN, 2015 WL 1607797, at *2 (Del. Ch. Mar. 31, 2015) (internal quotation omitted) (emphasis added) ("*Mack* III").

In the instant case, Plaintiff asserts that Defendant was not authorized to withdraw more than fifty percent of the funds by virtue of Plaintiff's joint ownership of the account (Doc. 37 at 6–7). This proposition stands in direct contradiction to the terms of the

---

[5] The terms of signature card agreement provided in relevant part as follows:

> JOINT ACCOUNT–PAYABLE TO EITHER OR SURVIVOR
> It is agreed and understood that any and all sums that may from time to time stand on this account, to the credit of the undersigned depositors, shall be taken and deemed to belong to them as joint tenants and not as tenants in common: while both joint tenants are living, either may draw and in case of the death of either, this Bank is hereby authorized and directed to deal with the survivor as sole and absolute owner thereof.

*Id.*

Discover CD Agreement. As in *Mack*, the language of the Discover CD Agreement clearly and unambiguously provides that either owner of a joint account may withdraw any funds and close the account (Doc. 37 at 32).

Plaintiff argues that *Mack* is inapposite to her case because the terms of the Discover CD Agreement are different from the terms of the agreement discussed in *Mack*. Specifically, Plaintiff argues that according to the Discover CD Agreement, once Bayuk died, the balance in the account passed to Plaintiff and Defendant in equal shares. In other words, Plaintiff appears to argue that once Bayuk died, Plaintiff and Defendant owned the account as tenants in common, rather than as joint tenants with right of survivorship. The Discover CD Agreement, however, provides in relevant part:

> A Joint Account is an Account held by more than one natural person. All Joint Accounts are established as joint tenancy with right of survivorship only. Joint with right of survivorship means that *if an owner of a Joint Account dies, the balance in the Joint Account passes to the remaining owner(s) of the Joint Account.* We do not offer any other type of joint account (i.e., tenants in common or tenants by the entirety).

(Doc. 37 at 31, Section 6(b)) (emphasis added). Nothing in the language of the Discover CD Agreement suggests that upon the death of one of the joint tenants, the nature of the account or the type of ownership over the account changes. To the contrary, the Discover CD Agreement is clear that no other form of ownership—tenants in common or tenants by the entirety—is offered by the bank. The Court finds that Plaintiff's interpretation of the Discover CD Agreement is contrary to its plain language.

Plaintiff also argues that summary judgment should be denied because questions of fact remain as to the intent of the parties regarding the disposition of the CD proceeds. Specifically, Plaintiff contends that by adding Defendant as an owner to the Discover CD,

neither she nor Bayuk intended to create a "winner-take-all race to the bank" as proposed by Defendant (Doc. 49 at 8). To support her argument, Plaintiff points to the denial of summary judgment in *Mack*. Unlike the plaintiff in *Mack* I, however, Plaintiff has provided no evidence to raise an issue of fact as to the existence of a supervening agreement regulating the disposition of the funds. In fact, Plaintiff was not involved in Bayuk's decision to add Defendant as a joint owner of the account. Therefore, Plaintiff's argument is unsubstantiated and insufficient to defeat summary judgment in this case. *See Ellis,* 432 F.3d at 1326 (holding that "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion"). In summary, the Court finds that Defendant exercised rightful dominion over her own property. Therefore, Plaintiff's Motion is denied and Defendant's Motion for Summary Judgment as to the conversion and civil theft claims is granted.

### III. Unjust Enrichment

Unjust enrichment under Delaware Law is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (citations omitted). To establish a claim for unjust enrichment Plaintiff must prove: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Id*.

The undisputed facts in this case show that Defendant took the proceeds of the Discover CD, Plaintiff is unable to dispose of the proceeds, and that Plaintiff's inability to the dispose of the funds is the result of Defendant's actions. Therefore, the elements of enrichment, impoverishment, and a relation between the enrichment and impoverishment are established. The next element of Plaintiff's cause of action requires the Court to determine whether Defendant's conduct was justified. By the terms of the Discover CD Agreement, Defendant, as a joint tenant, was entitled to withdraw the funds from the account and close the account. In the absence of a supervening agreement regulating Defendant's ability to dispose of the funds, the Court finds that Defendant was legally justified in withdrawing the funds. *Mack III,* 2015 WL 1607797, at *2. As a result, Defendant is entitled to summary judgment as to the unjust enrichment claim.

## **CONCLUSION**

Upon due consideration of the parties' arguments and briefs, the undersigned finds that there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law as to Plaintiff's claims (Count I, II, and III). Accordingly, it is hereby

ORDERED:

1. Plaintiff's Motion for Summary Judgment (Doc. 37) is DENIED;
2. Defendant's Motion for Summary Judgment (Doc. 40) is GRANTED.

3. Defendant's Motion to Strike Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment on Defendant's Counterclaim (Doc. 52) is DENIED.

ORDERED, in Tampa, Florida, on September 26, 2019.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE