UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KATERYNA BAYUK,

    Plaintiff/Counter Defendant,

v.                                  Case No. 8:18-cv-00163-T-SPF

JOANNA PRISIAJNIOUK,

    Defendant/Counter Plaintiff.
_____/

## ORDER

This cause is before the Court upon Defendant/Counter Plaintiff's ("Prisiajniouk") Motion for Summary Judgment on Defendant's Counterclaim ("Motion") (Doc. 48), and Plaintiff/Counter Defendant's ("Bayuk") response in opposition (Doc. 51). In addition, the Court, *sua sponte*, will consider whether summary judgment should be entered for Bayuk (Doc. 57). Upon consideration, Prisiajniouk's Motion is denied, and partial summary judgment is entered in favor of Bayuk.

## BACKGROUND

This case arises out of a family dispute between Bayuk (stepmother) and Prisiajniouk (stepdaughter) over various items of property left for disposition after the death of Orest Bayuk (Bayuk's spouse and Prisiajniouk's father). Bayuk and Orest Bayuk married in May 2002 after executing a Prenuptial Agreement on April 16, 2002 ("the Prenuptial Agreement"). The purpose of the Prenuptial Agreement was to "forestall possible family disputes and to insure marital tranquility" (Doc. 25-1). Unfortunately, it

did not have the desired effect. The Prenuptial Agreement is governed by the laws of the State of Florida and addresses the disposition of property acquired before and after the marriage (Doc. 25-1 at 6). In addition to the Prenuptial Agreement, on September 21, 2006, Orest Bayuk created the "Orest Bayuk Revocable Trust" (the "Orest Bayuk Trust"), appointing himself as the trustee, and appointing Bayuk as the successor trustee in case of his death or incapacity (Doc. 51-1). The same day, Orest Bayuk and Bayuk, transferred the ownership of a condominium located in Sarasota, Florida, and identified as "Unit 512, Building 17, Phase V, PINE HOLLOW," to the Orest Bayuk Trust (Doc. 51-2). It is undisputed that Bayuk is the only beneficiary of the Orest Bayuk Trust.

Orest Bayuk died on January 15, 2017. On October 27, 2017, Bayuk sued Prisiajniouk for civil theft, conversion, and unjust enrichment in State court over a CD account established by Orest Bayuk with a Delaware bank (Doc. 2). On January 19, 2018, Prisiajniouk removed the case to this Court and filed an answer to the Complaint. Along with her Answer, Prisiajniouk filed a Counterclaim for civil theft against Bayuk, arguing that Bayuk failed to return various items of property that according to the Prenuptial Agreement, belonged to Prisiajniouk as Orest Bayuk's sole heir (Docs. 1 & 25). The parties filed cross-motions for summary judgment as to Bayuk's Complaint (Docs. 37 & 40), and concerning the Counterclaim, Prisiajniouk moved to seek summary judgment on her Counterclaim (Doc. 48). On September 26, 2019, the Court granted summary judgment for Prisiajniouk as to Bayuk's Complaint (Doc. 54). Thereafter, the Court notified the parties of its *sua sponte* consideration of summary judgment for Bayuk as to

the Counterclaim ("Court's Notice") (Doc. 57). Prisiajniouk filed her response on November 19, 2019 (Doc. 58).

## **STANDARD**

Summary judgment is appropriate if all the pleadings, discovery, affidavits, and disclosure materials on file show that there is no genuine disputed issue of material fact, and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a) and (c). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could decide an issue of material fact for the non-moving party. *Anderson,* 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, the court must read the evidence and draw all factual inferences in the light most favorable to the non-moving party and it must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). "The determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 255.

When a party properly supports a motion for summary judgment, the nonmoving party then must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. It is not enough for the nonmoving party

to "merely assert[ ] that the jury might, and legally could, disbelieve" the moving party's evidence. *Id.* Instead, the nonmoving party must present "affirmative evidence" that would allow a reasonable jury to rule for him. *Id.* at 257.

## **DISCUSSION**

To maintain a claim for civil theft, Prisiajniouk must show an injury resulting from a violation of one or more provisions of the Florida "criminal theft statute." *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009). To do this, Prisiajniouk must demonstrate that Bayuk (1) knowingly obtained or used, or endeavored to obtain or use, (2) Prisiajniouk's property (3) with the "felonious intent" either temporarily or permanently to: (a) deprive Prisiajniouk of her right to or a benefit from the property or (b) appropriate the property to Bayuk's own use or to the use of any person not entitled to the property. *See id.* (citing Fla. Stat. §§ 772.11 and 812.014(1)). To establish "felonious intent," Prisiajniouk must demonstrate that Bayuk had actual knowledge that she engaged in the act of theft. *See Almeida v. Amazon.com, Inc.,* 456 F.3d 1316, 1327 (11th Cir. 2006) ("[T]heft is a specific intent crime, requiring actual knowledge on the part of the defendant."). Prisiajniouk must establish all elements of her civil theft claim by "clear and convincing evidence." *Id.* That is, Prisiajniouk must advance evidence "such that a reasonable jury might find that the elements [of the claim] had been shown with convincing clarity." *Anthony Distributors, Inc. v. Miller Brewing Co.*, 941 F. Supp. 1567, 1575 (M.D. Fla. 1996). Upon review of the record, the Court concludes that Prisiajniouk has failed to meet her burden and partial summary judgment should be entered in favor of Bayuk.

4

### I. Knowingly Obtained or Used

Prisiajniouk alleges that Bayuk knowingly exercised possession and dominium over assets that belong to Prisiajniouk according to the Prenuptial Agreement signed between the spouses (*see* Doc. 25 at 11). The property in dispute is as follows:

- a JPMorgan Chase Bank Account ending in 2117 (the "JPMorgan Account");
- a Liberty Savings Bank CD ending in 4434 (the "Liberty CD");
- a Liberty Savings Bank Account ending in 7062 (the "Liberty Bank Account");
- twenty paintings currently located in Bayuk's condominium;
- a 2003 BMW motor vehicle;
- a stamp collection;
- other personal property in Bayuk's condominium; and
- gold coins.

(Doc. 48 at 3–7). With respect to the gold coins, Bayuk denies their existence and, despite the extension of time given to Prisiajniouk to identify the property subject to her claim for civil theft (Doc. 44), Prisiajniouk provided no evidence for a jury to find that the gold coins exist. As a result, Prisiajniouk's Motion as to the gold coins is denied and summary judgment is entered in favor of Bayuk. As to the remaining property, Bayuk does not dispute that she is knowingly in possession of the property (*see* Doc. 51 at 11). Therefore, Prisiajniouk has established the first two elements of her civil theft claim as to the remaining property.

### II. Prisiajniouk's Legal Interest Over the Disputed Property

To establish her claim for civil theft, Prisiajniouk must also demonstrate that she has "a legally recognized property interest in the items [allegedly] stolen." *Anthony Distributors, Inc.*, 941 F. Supp. at 1575 (citing *Balcor Property Management, Inc., v. Ahronovitz*, 634 So.2d 277, 279 (Fla. 4th DCA 1994)). Prisiajniouk argues that as Orest Bayuk's sole

heir, she is entitled to the property at issue (Doc. 48 at 2). In her response, Bayuk does not dispute Prisiajniouk's property interest in the 2003 BMW motor vehicle and the stamp collection (Doc. 51 at 11). Bayuk, however, disputes Prisiajniouk's ownership of the bank accounts, paintings, and other personal property in her condominium (Doc. 51 at 4–5).

### A. Bank Accounts

It is undisputed that neither Prisiajniouk nor Bayuk contributed any funds to the accounts. It is also undisputed that the funds in the JPMorgan Account and Liberty Savings Account were distributed in their entirety to Bayuk, and the funds in the Liberty CD were distributed equally between Prisiajniouk and Bayuk (Doc. 48 at 4–6). Prisiajniouk challenges the distribution of the account proceeds, arguing that it was contrary to the terms of the Prenuptial Agreement. Bayuk counters that the distribution of the bank accounts was proper under Florida law, notwithstanding the Prenuptial Agreement (Doc. 51 at 4). The Court will address each of the disputed accounts in turn.

#### *1. JPMorgan Account*

At the center of the parties' dispute over the JPMorgan Account is the language chosen by Orest Bayuk and Bayuk to title the account. Specifically, Prisiajniouk argues that by failing to include the terms "joint tenants with rights of survivorship (JTWRS)" or "by the entireties" in the account's title, Orest Bayuk intended this account to remain his separate property under the terms of the Prenuptial Agreement (*see* Doc. 48 at 13). Bayuk does not dispute the validity or application of the Prenuptial Agreement. However, she argues that the JPMorgan Account was as a joint account with rights of survivorship (Doc. 51 at 8).

Section 655.79 of the Florida Statutes establishes two presumptions regarding ownership of accounts held in the name of two or more persons. The first presumption establishes that accounts held in the names of two or more persons shall be presumed to be a joint account with rights of survivorship. *See* Fla. Stat, § 655.79 (1). The second establishes that "any account made in the name of two persons who are husband and wife shall be considered a tenancy by the entirety." Fla. Stat, § 655.79 (1). According to Section 655.79, these presumptions may be modified by a written document. *Id*.

Here, the Prenuptial Agreement is clear and convincing proof of the parties' intent to modify the presumptions. Fla. Stat. § 655.79(2) (stating that the presumptions created by Section 655.79 "may be overcome only by proof of fraud or undue influence or clear and convincing proof of a contrary intent."). Particularly, section 9(b)[1] of the Prenuptial

---

[1] Section 9(b) of the Prenuptial Agreement states in its entirety as follows:

> Any property acquired after the marriage and held in joint names *shall be presumed to be joint property without rights of survivorship* except as may be otherwise provided or titled. However, at any time such property is to be divided, whether during the term of the marriage, upon dissolution of marriage or separation, or death of either party, the division shall be made according to the amount each party contributed to the property. This arrangement shall specifically include all household furnishings and utensils, any funds in joint accounts, securities jointly held, and the proceeds derived from any assets (for example interest, dividends, or the proceeds of the sale of an asset). If the parties intend that a specific asset acquired in joint names without rights of survivorship should not be treated as a joint asset or that it be divided in a manner other than according to the parties respective contributions, the relevant terms regarding their interest shall be set forth in writing specifically referring to the property affected and signed by both parties. Said writing need not be executed in the same manner as this Agreement. The parties may also agree to title certain assets as tenants by the entireties with rights of survivorship or as joint tenants with rights of survivorship and in such cases this shall be evidence of their intent not to treat the asset as jointly owned

Agreement states that "[a]ny property acquired after the marriage and held in joint names shall be *presumed to be joint property without rights of survivorship*" and "at any time such property is to be divided . . . the division shall be made according to the amount each party contributed to the property." (Doc. 51-1 at 3) (emphasis added).

The Prenuptial Agreement, however, provided that the parties may title property "as tenants by the entireties with rights of survivorship or as joint tenants with rights of survivorship" in order to avoid the application of the presumption of joint ownership without rights of survivorship (Docs. 51-1 at 3). Relying on the Prenuptial Agreement language, Bayuk argues that by titling the JPMorgan Account as "*Orest Bayuk or Katerine,*" the account is held as a joint account with survivorship rights (Doc. 51 at 7). The JPMorgan Account's signature card, however, does not indicate that this account was held as "tenants by the entireties with rights of survivorship" or as "joint tenants with rights of survivorship" (Docs. 48-1 and 48-3). The signature card simply shows that the account was titled as a "joint" account (Doc. 48-3). *See Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104–05 (11th Cir. 2014) (stating that "contract interpretation [is] a question of law, decided by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent. That intent is derived from the objective meaning of the words used.") (citations omitted). Under the terms of the Prenuptial Agreement, this joint account is presumed to be without rights of

---

without rights of survivorship and hence without regard to the contribution of either party.

(Doc. 51-1 at 3) (emphasis added).

8

survivorship.[2] Because Bayuk contributed no funds to the creation of the account, the proceeds in the account should have been distributed to Prisiajniouk as Orest Bayuk's only heir. As a result, Prisiajniouk has demonstrated a legally recognized property interest in the JPMorgan Account.

### 2. *Liberty CD*

The Liberty CD designates Bayuk and Prisiajniouk as pay-on-death ("POD") beneficiaries (Doc. 48-4 at 1–2). Upon Orest Bayuk's death, both Bayuk and Prisiajniouk received 50% of the proceeds from the Liberty CD (Doc. 48 at 5). Prisiajniouk argues that she was entitled to receive 75% of the proceeds, not 50%, because she was designated as both a joint owner to the account (a party to the account) and as Orest Bayuk's POD beneficiary. Prisiajniouk argument is based on her allegation that the account is titled "*Orest Bayuk [blank space] Joanna Prisiajniouk*" (*see* Doc. 48 at 4). A review of the Liberty CD's signature card, however, shows that the account is titled in Orest Bayuk's name only (Doc. 48-4 at 1). Therefore, Prisiajniouk's argument that she is a party to the account is without merit. *See* Fla. Stat. § 655.82(1)(f) (defining a "Party" to a POD account as "a person who, by the terms of an account, has a present right, subject to request, to payment from the account other than as a beneficiary").

---

[2] Although extrinsic evidence of the intent of the parties is not necessary when a contract is unambiguous, *see Feaz,* 745 F.3d at 1104–05, the Court's conclusion is further supported by the existence of other bank accounts jointly held by Orest Bayuk and Bayuk that were expressly titled as joint tenancy with rights of survivorship ("JTWROS") or "By the Entireties."

9

Further, the Liberty CD was properly distributed according to the Florida law applicable to POD accounts. An account designated as a POD account is considered a "will substitute" that does not transfer ownership of funds until the death of the account holder or holders. *See Keul v. Hodges Blvd. Presbyterian Church*, 180 So. 3d 1074, 1076–77 (Fla. 1st DCA. 2015) (internal quotations omitted). POD accounts differ from joint accounts and are regulated by Section 655.82 of the Florida Statutes. *See Brown v. Brown*, 149 So. 3d 108, 111 (Fla. 1st DCA. 2014). Regarding ownership of the funds in a POD account, Florida law provides that "[o]n the death of the sole party or the last survivor of two or more parties, sums on deposit belong to the surviving beneficiary or beneficiaries. If two or more beneficiaries survive, sums on deposit belong to them *in equal and undivided shares*." Fla. Stat. § 655.82(3)(b) (emphasis added). Here, Liberty Bank properly distributed the proceeds of the Liberty CD in equal shares to the named POD beneficiaries. Consequently, Prisiajniouk cannot establish a legally cognizable interest in the proceeds distributed to Bayuk, therefore, summary judgment is entered in favor of Bayuk as to the Liberty CD.

### 3. *Liberty Bank Account*

As to the Liberty Bank Account, Prisiajniouk argues that the account should have been distributed in equal shares to Prisiajniouk and Bayuk as POD beneficiaries. "[I]n an account with a pay-on-death designation . . . [o]n the death of one of two or more parties, sums on deposit in the account belong to the surviving party or parties." Fla. Stat. § 655.82 (3)(a). Further, "[a] beneficiary in an account having a pay-on-death designation has no right to sums on deposit during the lifetime of any party." Fla. Stat. § 655.82 (2). To

support her claim, Prisiajniouk combines two separate lines in the account's title to read—*"Orest Bayuk POD Kathy Bayuk (aka Katerina Bayuk)."* Prisiajniouk argues that this modified title clearly shows that Bayuk was designated as a POD beneficiary to the account. Therefore, the issue here is whether Bayuk was a "party" or a "POD beneficiary."

The Signature Card to the Liberty Bank Account is as follows:

```
7062                    OREST BAYUK POD
                        KATHY BAYUK  (AKA KATERINA BAYUK
05/21/02

                        Signatures Req for WDL
                                  1
Signature              (Title of Business)

  x Orest Bayuk
Signature              (Title of Business)

  x Kathy Bayuk
Signature              (Title of Business)

The above signed acknowledge(s) receipt of the Bank's Your Deposit Account disclosure and
agree(s) to be bound by the terms and conditions therein.
Deposit Classification | Rate    | Combine Statement | Opened by
Winner 50              | 0.995   |                   | NM
Place of Employment    | Business Phone | Personal Identification
RETIRED
Designation of Ownership | Interest Distribution | Interest Transferred To
012                      | 0

Trust or Pay-on Death Beneficiary Designation        Relationship
JOANNA PRISIAJNIOUK                                  DAUGHTER
                                                              Existi '97
                                                              Kat
LSB-1                                    ☐ Chex Systems
```

(Doc. 48-5 at 1). A complete reading of the signature card clearly shows Bayuk was a "party" to the account, not a POD beneficiary. *See Feaz*, 745 F.3d at 1104–05. Not only

11

is Bayuk's signature visible in the section designated for account owners, but Prisiajniouk is the only individual designated as POD beneficiary to the account. *See* Fla. Stat. § 655.82(1)(f). Thus, the Liberty Bank Account was held jointly by husband and wife in a Totten trust, and Prisiajniouk was entitled to the account only upon the death of both husband and wife. Consequently, Prisiajniouk cannot establish a legally cognizable interest over the Liberty Bank Account. Therefore, summary judgment is entered in favor of Bayuk.

### B. Paintings

Prisiajniouk argues that she is entitled to approximately twenty paintings painted by her mother, Orest Bayuk's first's wife, which are displayed in Bayuk's condominium. Bayuk counters that the paintings are part of the Orest Bayuk Trust to which she is the sole beneficiary (Doc. 51 at 5). As stated above, Orest Bayuk and Bayuk transferred ownership of Bayuk's condominium to the Orest Bayuk Trust on September 21, 2006. However, neither the language of the Orest Bayuk Trust, nor the warranty deed makes any mention as to the contents of the condominium (see Docs. 51-1 and 51-2). Moreover, the Prenuptial Agreement clearly states that the presumption of joint ownership without right of survivorship "specifically include[s] all household furnishings and utensils" (Doc. 48-1, Section 9(b)). Although the Prenuptial Agreement states that "[e]ither of the parties may elect to make a gift to the other by will or trust," (Doc. 48-1 at Section 14(b)), nothing in the Orest Bayuk Trust indicates that the paintings were part of the trust. Therefore, as Orest Bayuk's sole heir, Prisiajniouk has established a legally cognizable interest over the paintings.

### C. Other Personal Property

Prisiajniouk claims ownership over some unidentified personal property within Bayuk's condominium. Bayuk argues that, assuming the unidentified property refers to "the modest furnishing found in the condominium," such property belongs to the Orest Bayuk Trust. As stated above, neither the language of the Orest Bayuk Trust, nor the Prenuptial Agreement supports Bayuk's position. Nevertheless, Prisiajniouk has failed to properly identify the "other personal property" subject to her claim of civil theft. Without identifying the specific property, Prisiajniouk's action for civil theft cannot lie. *See e.g., Miles Plastering & Associates v. McDevitt*, 573 So. 2d 931 (Fla. 2d DCA 1991) (concluding that where the amount in controversy was unknown by the parties and there was no identifiable account or piece of property from which money was to be paid, an action for civil theft did not lie). As a result, Prisiajniouk's Motion is denied, and summary judgment is entered in favor of Bayuk.

### III. Felonious Intent to Deprive Prisiajniouk of Her Property.

To establish the element of "felonious intent," Prisiajniouk must demonstrate by clear and convincing evidence that Bayuk had the "intent to steal" the 2003 BMW, stamp collection, paintings, and the JPMorgan Account. *See Anthony Distributors, Inc.*, 941 F. Supp. at 1576 (describing the required mens rea to establish civil as the "intent to steal"). Prisiajniouk advances two arguments to support her Motion. First, Prisiajniouk argues that, contrary to Bayuk's affirmative obligation under the Prenuptial Agreement to transfer and deliver the disputed property to Orest Bayuk's successor in interest, Bayuk concealed the existence of the Prenuptial Agreement to deprive Prisiajniouk of her

superior interest in the property (*see* Doc. 58 at 3–5, 12). Nothing in the Prenuptial Agreement, however, obligates Bayuk to affirmatively seek the transfer and delivery of property to Prisiajniouk or to notify her of the existence of the same. Even if such obligations exist, a simple breach of the Prenuptial Agreement is insufficient to establish civil theft. *Misabec Mercantile, Inc. De Panama v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc.*, 853 F.2d 834, 838 (11th Cir. 1988) ("A simple breach of contract does not ordinarily constitute civil theft"). Where the civil theft is connected to a breach of contract, as Prisiajniouk alleges (*see* Doc. 58 at 1–11),[3] there must be clear and convincing evidence of "an intricate sophisticated scheme of deceit and theft." *Trend Setter Villas of Deer Creek v. Villas on the Green, Inc.*, 569 So.2d 766, 767 (Fla. 4th DCA 1990). Prisiajniouk has not met this burden.

Second, Prisiajniouk argues that as long as Bayuk is exercising dominion and control over the property to which Prisiajniouk's has a superior claim of title, a reasonable person could find Bayuk is acting with the intent to steal the property. Specifically, Prisiajniouk argues that to establish a claim for civil theft, the relevant inquiry is not whether Bayuk "believed her right to the property was superior, but whether it actually was superior" (Doc. 58 at 18). The Court finds Prisiajniouk's argument unpersuasive. While a claim for conversion "may be established despite evidence that the defendant took or retained property based upon the mistaken belief that he had a right to possession," Prisiajniouk did not plead a conversion claim. *Seymour v. Adams,* 638 So.2d 1044, 1047

---

[3] In her response to the Court's Notice, Prisiajniouk briefed a claim for breach of contract against Bayuk. Prisiajniouk, however, did not plead a breach of contract counterclaim.

(Fla. 5th DCA 1994) (citations omitted). A claim for civil theft requires "actual knowledge" of the act of stealing. *See Healy v. Suntrust Serv. Corp.*, 569 So. 2d 458, 460 (Fla. 5th DCA 1990). In other words, a defendant's good faith belief that she was entitled to the property is contrary to the required felonious intent to steal. *See Rosen v. Marlin*, 486 So. 2d 623, 625 (Fla. 3d DCA 1986) ("a necessary element for establishing the crime of theft is that the defendant had, prior to the commission of the act, an intent to commit a theft."). Here, Bayuk's testimony and her response to Prisiajniouk's Motion raise issues of fact as to whether Bayuk was under the mistaken belief that she had a superior legally cognizable interest in the disputed property. As previously discussed, Bayuk believed she was entitled to the JPMorgan Account. Similarly, Bayuk believed that the art and stamp collection where part of the Orest Bayuk Trust to which she was entitled. Therefore, the Court cannot conclude that Prisiajniouk clearly and convincingly established Bayuk's intent to steal the property.

Finally, as to the 2003 BMW, Bayuk testified that the original 1998 BMW described in the Prenuptial Agreement as separate property was sold by Orest Bayuk to buy a new vehicle after their marriage (Doc. 58-3 at 19:17–20, 57:17–25). She also testified that the new car was totaled after Orest Bayuk was involved in a car accident, which led to the purchase of the 2003 BMW (Doc. 58-3 at 18:4–8). She further testified that the 2003 BMW was titled in both their names, and that after Orest Bayuk's death she changed the title to her name to avoid problems (Doc. 58-3 at 17:22–18:3). In her response to Prisiajniouk's Motion, however, Bayuk concedes that the vehicle is titled in Orest Bayuk's name and does not dispute Prisiajniouk's legal interest in the vehicle. While Bayuk's

inconsistent positions regarding the title of the 2003 BMW calls into question her intent, Prisiajniouk has not established Bayuk's felonious intent by clear and convincing evidence. As a result, summary judgment in favor of either party is not appropriate with respect to the JPMorgan Account, art, stamp collection, and 2003 BMW. Accordingly, it is hereby

ORDERED:

1. Prisiajniouk's Motion for Summary Judgment on Defendant's Counterclaim (Doc. 48) is DENIED.

2. Summary judgment in favor of Bayuk as to Prisiajniouk's Counterclaim is GRANTED, *sua sponte,* as to the Liberty CD, Liberty Bank Account, gold coins, and other unidentified personal property.

ORDERED in Tampa, Florida, on December 30, 2019.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE